IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GREGORIO B. PORTILLO and
CASSIE MARIE GLADNEY,

       Plaintiffs,

vs.                                        No. CIV 98-713 MV/WWD

THE CITY OF ALBUQUERQUE; CITY
OF ALBUQUERQUE OFFICER
ROBERT JEFFREY, in his individual
capacity; CITY OF ALBUQUERQUE
OFFICER FELIX MARTINEZ, in his
individual capacity; BERNALILLO
COUNTY DETENTION CENTER
CORRECTIONS OFFICERS-- JOHN
DOE I AND JOHN DOE II, in their
individual capacities, and THE
UNIVERSITY OF NEW MEXICO,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Gladney's Motion for Judgment

Notwithstanding the Verdict and Motion for New Trial, filed September 15, 1999 **[Doc. No. 85]**.

The Court having considered the motion, response, and relevant law, and being otherwise fully

informed, finds that the Plaintiff's Motion is not well-taken and will be **DENIED**.

### BACKGROUND

Plaintiffs Gregorio B. Portillo and Cassie Marie Gladney brought this suit alleging

constitutional claims and violations of the New Mexico Tort Claims Act.  Portillo claims that

Defendant Officer Robert Jeffrey used excessive force during his arrest at a sobriety checkpoint,

battered him and retaliated against him for filing a civilian complaint by wrongfully re-filing criminal charges against him. Portillo further charges that he was assaulted by corrections officers at Bernalillo County Detention Center ("BCDC"). Gladney alleges that Defendant Officer Felix Martinez deprived her of her Fourth Amendment rights by detaining her without reasonable suspicion and arresting her without probable cause. Gladney claims that she was detained and arrested in retaliation for her voiced objections to Jeffrey's treatment of Portillo in violation of the First Amendment. She further alleges that Martinez wrongfully filed criminal charges against her in retaliation for her objections.

A jury trial was held from August 16 to August 23, 1999. The jury was given a special verdict form asking whether the Defendants had committed the acts alleged. As to those claims to which qualified immunity could apply, the special verdict form asked, if the jury found a violation, whether the relevant Defendant was entitled to qualified immunity as to that claim.

The jury found that Jeffrey used excessive force in the course of arresting Portillo, but that Jeffrey did not violate Portillo's constitutional rights by re-filing criminal charges against him in retaliation. The jury awarded Portillo $9,000 of compensatory damages and $1,000 of punitive damages for Jeffrey's use of excessive force. The jury found that Jeffrey and the BCDC corrections officers had battered Portillo and awarded him compensatory damages of $9,000 and $18,000 against the respective defendants for this claim.

As to Gladney's claims, the jury found that Martinez committed malicious abuse of process against Gladney by filing criminal charges against her, and awarded her $1,000 of compensatory damages for this claim. The jury found that Martinez had not arrested her for exercising her First Amendment rights. Further, it found Martinez had violated Gladney's

constitutional rights by detaining her without reasonable suspicion and arresting her without probable cause, but that Martinez was entitled to qualified immunity on these claims.

Plaintiff Gladney now moves for judgment notwithstanding the verdict or for a new trial on her Fourth Amendment claims of detention without reasonable suspicion and arrest without probable cause, asserting that the Court erroneously submitted the qualified immunity defense issue to the jury.

## ANALYSIS

The decision whether to grant a motion for a new trial is committed to the broad discretion of the trial court. *Royal College Shop, Inc. v. Northern Ins. Co. of N.Y.*, 895 F.2d 670, 677 (10th Cir. 1990). Courts facing a motion for a new trial predicated on claimed errors in jury instructions must view those instructions as a whole, *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1549 (10th Cir.1987), and generally must "consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." *Patty Precision Products Co. v. Brown & Sharpe Mfg. Co.*, 846 F.2d 1247, 1252 (10th Cir. 1988) (citations and quotations omitted).

Gladney asserts that the Court erred in instructing the jury on qualified immunity. The Court gave the jury an instruction on qualified immunity and included questions regarding the qualified immunity defense on the verdict form. Also relevant is the instruction regarding the standards for determining whether Martinez unlawfully detained or arrested Gladney. Instruction No. 22 dealt with these standards, explaining that to find a due process violation the jury would have to determine whether Martinez acted lawfully and providing,

A police officer may not lawfully detain an individual unless he has a reasonable belief that the person is engaged in or has engaged in criminal activity. If you find that Defendant Martinez had a reasonable belief that Plaintiff Gladney had violated the law when he detained Plaintiff Gladney, you must find for Defendant Martinez. If you find that Defendant Martinez had no such reasonable belief, then you must find for Plaintiff Gladney.

Police officers may not arrest a person without an arrest warrant unless they have probable cause to believe that a crime has been committed and that the person in question has committed that crime. Probable cause exists if the facts and circumstances known to the officer and of which he had reasonable, trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed a crime.

In determining whether an officer had reasonable grounds to believe that a person has committed an offense, the facts known to him need not meet the standard of conclusiveness upon which a conviction must be based; but, rather, the actions of the officer in making an arrest are to be measured by the test of what a reasonable person would have believed under the same circumstances.

The challenged instruction regarding qualified immunity, Instruction No. 30, states in

relevant part,

If you find . . . that Plaintiff Gladney has proved her claim that Defendant Martinez detained or arrested her in violation of her constitutional rights, . . . you must also consider Defendant Martinez's defense that his conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident in issue and that Defendant Martinez is therefore not liable. This defense is known as qualified immunity. If you find that Defendant Martinez is entitled to qualified immunity, you may not find him liable.

Police officers are presumed to know about the clearly established constitutional rights of citizens.

If, after considering the scope of discretion and responsibility generally given to police officers in the performance

of their duties, and after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time of the incident, you find from a preponderance of the evidence that Defendant Martinez had a reasonable belief that his actions did not violate Plaintiff Gladney's constitutional rights, then Defendant Martinez is entitled to qualified immunity and you cannot find him liable even if Plaintiff Gladney's rights were in fact violated as a result of Defendant Martinez's objectively reasonable actions.

The first four questions on the verdict form which are the relevant portions of the form for this motion, provide,

1. Did Defendant Martinez violate Plaintiff Gladney's constitutional rights by detaining her without reasonable suspicion?
   Yes____              No__

2. If you answered yes to Question No. 1, is Defendant Martinez entitled to qualified immunity on Plaintiff Gladney's claim that Defendant Martinez violated her constitutional rights by detaining her without reasonable suspicion? (If you answered no to Question No. 1, go on to the next question.)
   Yes____              No__

3. Did Defendant Martinez violate Plaintiff Gladney's constitutional rights by arresting her without probable cause?
   Yes____              No__

4. If you answered yes to Question No. 3, is Defendant Martinez entitled to qualified immunity on Plaintiff Gladney's claim that Defendant Martinez violated her constitutional rights by arresting her without probable cause? (If you answered no to Question No. 3, go on to the next question.)
   Yes____              No__

Essentially, in determining whether Martinez violated Gladney's Fourth Amendment rights by detaining and arresting her, the jury was instructed to decide whether a reasonable officer, based on the circumstances, would have believed that Gladney had committed a crime. In determining whether Martinez was entitled to a qualified immunity defense as to these charges,

5

the jury was instructed to decide whether Martinez had an objectively reasonable belief that he was not violating Gladney's constitutional rights, i.e., that she had committed a crime.

Plaintiff argues for judgment in her favor or a new trial, reasoning that the factual analysis required to determine whether the Martinez's detention and arrest of Gladney is the same as the analysis regarding whether the officer should be granted qualified immunity. Plaintiff goes on to point to several Circuits which have held that the qualified immunity issue should not be submitted to the jury in Fourth Amendment probable cause cases, while noting that the Second and Fifth Circuits allow the jury to decide qualified immunity in such cases. The Tenth Circuit has not squarely ruled on this issue. However, Plaintiff points to several rulings by the Tenth Circuit that qualified immunity is an issue of law, and Plaintiff reasons that the issue therefore should not be submitted to the jury.

Defendants counter that the challenged instruction was proper. They assert that the probable cause and qualified immunity questions do not involve the same factual analysis, relying on the fact that qualified immunity has been used to shield a defendant from damages even if the officer has been found to have violated a plaintiff's constitutional rights. Therefore, Defendants reason, the jury could have determined that though Martinez's actions were unreasonable under the Fourth Amendment, his actions were reasonable under the qualified immunity standard. Moreover, Defendants assert that even if the Court found that it was error to give the qualified immunity instruction, Gladney would not be entitled to a judgment notwithstanding the verdict, but only a new trial.

The differing views presented by the parties are not surprising in this complex area of qualified immunity. A review of some of the caselaw in this area is warranted before proceeding

to ruling on the particular issue presented.  Qualified immunity shields from liability government actors who comply with clearly established law while executing their administrative functions.  In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court established an objective test for whether an official is entitled to qualified immunity.  The court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818 (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).  The application of this standard varies depending on the claim alleged and must be assessed based on the particular facts of the case.

In *Anderson v. Creighton*, 483 U.S. 635 (1987), the Supreme Court considered the application of qualified immunity in warrantless search cases.  In explaining how the "clearly established" violation should be determined, the Court stated, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id.* at 640.  However, the fact that it is well established that searching a home without probable cause or exigent circumstances violates the Fourth Amendment does not settle that an officer's warrantless search was unreasonable for qualified immunity purposes.  Rather, the relevant inquiry "is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the defendant officer's] warrantless searches to be lawful, in light of clearly established law and the information the searching officers possessed."  *Id.* at 641.  Even officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity.

*Id.* The Court made clear that it was important to assess the reasonableness of the officer's belief based on the particular circumstances and the information he or she had at the time.

The effect of *Anderson* is that in warrantless search and arrest cases two reasonableness determinations must be made – first, whether a reasonable officer would have thought there was probable cause and second, whether the defendant officer could have reasonably believed that there was probable cause.[1]  The result of these holdings, has been explained as follows, "law enforcement officers who reasonably but mistakenly believe there is probable cause to arrest are protected against liability by qualified immunity."  Martin A. Schwartz & John E. Kirlin, Section 1983 Litigation: Claims and Defenses §9.28, at 463 (3d ed. 1997).

*Anderson* addresses the first primary argument raised by Gladney – that giving the qualified immunity instruction was error because whether a reasonable officer had probable cause to arrest her is the same question as whether the officer was entitled to qualified immunity.  This argument is flawed.  The two reasonableness inquiries are distinct, and, under *Anderson*, both are required.  As the Court properly instructed the jury, the probable cause inquiry looks at whether a reasonably prudent officer would believe the suspect committed a crime, whereas the qualified immunity inquiry relies on whether Officer Martinez could have had a reasonable belief that he did not violate Gladney's Fourth Amendment rights.  As the Fifth Circuit has explained, "an officer may make mistakes that infringe constitutional rights and yet not be held liable where, given

---

[1]Dissenting in *Anderson v. Creighton*, Justice Stevens criticized what he termed a "double standard of reasonableness – the constitutional standard already embodied in the Fourth Amendment and an even more generous standard that protects any officer who reasonably could have believed that his conduct was constitutionally reasonable."  483 U.S. at 648.

unclear law or uncertain circumstances, it cannot be said that she knew she was violating a person's rights." *Presley v. City of Benbrook*, 4 F.3d 405, 409 (5th Cir. 1993).

The second primary argument raised by Gladney is that it was improper to give the qualified immunity instruction and determination to the jury. Gladney asserts it was not, pointing to several Tenth Circuit cases for the proposition that qualified immunity is a legal question which should therefore be decided by the court. It is certainly true that the Supreme Court has held that qualified immunity is "ordinarily" a legal issue for the court to resolve, in part because of the importance, whenever possible, of finding qualified immunity at the earliest possible point in litigation to effect its purpose of shielding government officials from both pre-trial matters such as discovery as well as trial and liability. In *Hunter v. Bryant*, 502 U.S. 224, 228 (1991), the Supreme Court held "[i]mmunity ordinarily should be decided by the court long before trial." However, as explained above, the Supreme Court has also made clear that whether a government actor is entitled to qualified immunity must be decided based on the specific circumstances and facts of the case. *See Anderso*n, 483 U.S. at 641. This circumstances-specific inquiry often requires difficult factual determinations which are properly the province of the jury.

Circuits have taken varying approaches regarding what portion of the qualified immunity determination should be made by the court and what by the jury. Some Circuits have held that if a case proceeds to trial and if there are factual disputes in issue regarding qualified immunity, whether the official is entitled to immunity may be submitted to the jury. *See e.g., Presley*, 4 F.3d at 410 (Fourth Amendment entry and arrest case). Other Circuits have held that a district court may submit disputed factual issues to the jury using special verdict forms, but that the court should decide the legal issue whether qualified immunity is available. *See, e.g., King v. Macri*,

993 F.2d 294, 299 (2d Cir. 1993)(permissible to submit disputed factual questions to jury);

*Cotrell v. Caldwell*, 85 F.3d 1480, 1488 (11th Cir. 1996)(qualified immunity is a legal question

for courts; jury interrogatories should not use the term "qualified immunity"); *Sharrar v. Felsing*,

128 F.3d 810, 827 (3d Cir. 1997)(proper to give jury disputed facts). Still other Circuits have left

up to the district court the decision whether to have the jury decide only the disputed factual

issues or also the application of qualified immunity. *See Swain v. Spinney*, 117 F.3d 1, 10 n.3.

(1st Cir. 1997)("the proper division of functions between judge and jury on the objective

reasonableness inquiry may be accomplished either through special interrogatories or through

carefully structured jury instructions. We leave that decision here to the trial court").

As Gladney states, there is no Tenth Circuit case directly on point, deciding whether it is

proper in a detention and arrest without probable cause case for the jury to be instructed on the

qualified immunity question. Prior to several important Supreme Court cases in this area, the

Tenth Circuit held it was proper to submit the qualified immunity issue to the jury in Fourth

Amendment cases. *See Shank v. Naes*, 773 F.2d 1121 (10th Cir. 1985)(arrest without probable

cause case); *Bledsoe v. Garcia*, 742 F.2d 1237, 1240 (10th Cir. 1984)(excessive force case).

Gladney contends that these cases are no longer good law because of subsequent Supreme Court

and Tenth Circuit holdings. Instead, Gladney points to *Melton v. City of Oklahoma City*, 879

F.2d 706, 726 (10th Cir. 1989), a due process and First Amendment case, in which the court held

that qualified immunity was a legal issue which therefore should not have been submitted to the

jury. As discussed above, however, despite the Supreme Court's finding that qualified immunity

is "ordinarily" a legal issue, whether the defense applies often requires factual determinations

proper for a jury. Because there is no Tenth Circuit case on point holding that in unlawful

detention and arrest cases, the determination whether the officer is entitled to the qualified immunity defense can be decided by the jury, the Court declines to hold that to do so here was error. The challenged jury instruction was patterned after instruction 10.1 in the Fifth Circuit Pattern Jury Instructions (1999) and is in keeping with Fifth Circuit law. *See Presley*, 4 F.3d 405. The Court finds it was proper to submit to the jury the fact-intensive inquiry whether, given the circumstances and assuming knowledge of constitutional requirements, Martinez reasonably could have thought he was acting lawfully when he detained and arrested Gladney.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Gladney's Motion for Judgment Notwithstanding the Verdict and Motion for New Trial **[Doc. No. 85]**, is hereby DENIED**.**

MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:
  Joseph P. Kennedy
  Carolyn M. Nichols
  Shannon L. Oliver

Attorneys for Defendant:
  Kathryn Levy
  Richard A. Sandoval